UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| NORMA MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-114-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WAL-MART STORES, INC., | ) | **& ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In the Wild West, the rule was "shoot first, ask questions later." In modern civil litigation, the rule seems to be "remove first, ask questions later." It is common practice for defendants to remove cases from state court to federal court almost reflexively, within just a few weeks of being served. This often creates a problem. A defendant may only remove a case to federal court if he can establish by a preponderance of the evidence that the case satisfies the requirements for federal jurisdiction. But at this early stage of the litigation in state court, facts are sparse. Discovery has either not yet begun or is only in the beginning stages. Because of this dearth of evidence it may be impossible for the defendant to establish jurisdictional facts—especially the amount in controversy—by a preponderance of the evidence. But many defendants are not deterred. They remove the case anyway and then request discovery in federal court to obtain the evidence necessary to establish federal jurisdiction. And many courts have acquiesced, granting removing defendants so-called "jurisdictional discovery."

This common scenario has played out yet again in this case. The plaintiff, Norma May, filed a complaint in Kentucky state court against Wal-Mart. Less than three weeks after being

served with the complaint in the state case, Wal-Mart removed the case to this Court. Because the case is in its infancy and discovery has just begun, Wal-Mart cannot yet establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000. So Wal-Mart has requested jurisdictional discovery.

Because jurisdictional discovery is inconsistent with the limited nature of federal jurisdiction and the need to respect the authority of state courts, the Court will not retain jurisdiction over this case. To remove a case to federal court, the defendant must be prepared *at the moment of removal* to demonstrate by a preponderance of the evidence that federal jurisdiction exists. Wal-Mart has not done so. Therefore, the Court will deny Wal-Mart's request for jurisdictional discovery and will remand this case to state court.

## BACKGROUND

Norma May slipped and fell on a wet floor in the Wal-Mart in Pikeville, Kentucky. She injured her lower back, left knee, left foot, and right ankle. May filed a complaint against Wal-Mart in Pike Circuit Court on July 2, 2010. R. 1, Attach. 1. May's complaint did not demand a specific amount of damages. She only alleged that her damages exceeded the state court's jurisdictional minimum of $4,000. *Id.* ¶ 4. May served Wal-Mart with the complaint on August 25, 2010. Wal-Mart filed a notice of removal in this Court less than three weeks later. R. 1. The notice of removal asserted that the parties were citizens of different states and that "it is believed that the amount in controversy herein exceeds $75,000.00 exclusive of interest and costs." *Id.* ¶ 2.

Wal-Mart's bald averment did not establish that the Court had jurisdiction. Therefore, the Court issued a Show Cause Order directing Wal-Mart to "produce evidence of the amount in controversy" no later than September 24, 2010. R. 5. Wal-Mart responded by producing a copy of a letter from May's attorney demanding settlement in the amount of Wal-Mart's liability limits. R. 6, Attach. 1. Wal-Mart claims that because May did not limit her demand to an amount less than $75,000, she must be seeking more than that amount. R. 6 at 1. Wal-Mart also asks the Court to grant the parties a "reasonable period of time to undertake discovery to more fully explore the amount sought by [May] before [the] Court determines whether to remand." *Id.* Wal-Mart asks the Court to retain jurisdiction "until such time as [May] agrees that the amount in controversy is less than $75,000, the evidence shows that the amount in controversy herein is less than $75,000, or this matter is finally concluded." *Id.*

## DISCUSSION

Norma May filed this case in the Pike Circuit Court—a perfectly competent court in the Commonwealth of Kentucky. Three weeks after May served the company with her complaint, Wal-Mart chose to remove the case to federal court under 28 U.S.C. § 1441. In so doing, Wal-Mart took upon itself the burden of proving by a preponderance of the evidence that this Court has subject matter jurisdiction. *See Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (overruled on other grounds). Wal-Mart must establish that, at the time it removed this case, the parties were citizens of different states and the amount in controversy exceeded $75,000. *See Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) (internal citation omitted). The

diversity requirement has clearly been satisfied. Wal-Mart is a citizen of Arkansas and May is a citizen of Kentucky.

The amount-in-controversy requirement is more tricky. May's complaint does not demand a specific amount of damages. She simply alleges that her damages exceed $4,000—the state court's jurisdictional minimum. R. 1, Attach. 1. This is not at all unusual. Plaintiffs in state court frequently do not demand sum-certain damages. Indeed, plaintiffs in Kentucky are prohibited from doing so. *See* Ky. R. Civ. P. 8.01(2) ("[T]he prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court . . . ."). But the unspecified nature of May's claim for damages does not relieve Wal-Mart of its obligation to establish federal jurisdiction by a preponderance of the evidence. *See Gafford*, 997 F.2d at 158-60. Until Wal-Mart satisfies this burden, this Court "is without subject matter jurisdiction to hear the case." *King v. Household Fin. Corp. II*, 593 F. Supp. 2d 958, 959 (E.D. Ky. 2009).

In response to the Court's Show Cause Order, Wal-Mart attempts to satisfy its burden of proving that the amount in controversy exceeds $75,000 in two ways. First, Wal-Mart has produced a copy of a letter that May's attorney sent to Wal-Mart demanding a settlement equal to its liability limits. R. 6, Attach. 1. Second, if the demand letter is not sufficient, Wal-Mart asks the Court to afford it an opportunity to conduct discovery into the amount in controversy. Because May's demand letter does not establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 and because jurisdictional discovery is inconsistent with the limited nature of federal jurisdiction, the Court will remand this case to state court.

4

## I. Demand Letter

The sole piece of evidence that Wal-Mart has produced in support of its contention that the amount in controversy exceeds $75,000 is a letter that May's counsel sent to Wal-Mart's insurance carrier on June 23, 2010. R. 6, Attach. 1. The letter sets forth May's allegations, recites her injuries, lists the treatment that she received (totaling $17,471.73 in medical expenses), and demands settlement in the amount of Wal-Mart's liability limits. *Id.* Wal-Mart contends that because the demand "was not limited to an amount less than $75,000 [it] evidences the fact that Plaintiff seeks more than $75,000." R. 6.

Although the settlement demand letter is *some* evidence that May seeks more than $75,000 in damages, it assuredly does not establish that it is "more likely than not" that the amount in controversy exceeds $75,000. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). First, Wal-Mart has not established what its liability limits are. But even if it had, May's initial settlement demand is not determinative of the amount in controversy. "[I]t is settled that, in ascertaining the amount in controversy for jurisdictional purposes, 'where the law gives the rule, the legal causes of action, and not the plaintiff's demand, must be regarded.'" *Parmelee v. Ackerman*, 252 F.2d 721, 722 (6th Cir. 1958) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)). After all, high-balling the initial settlement demand is Negotiation 101. Therefore, the demand letter does not prove by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000.

## II. Jurisdictional Discovery

Having failed to carry its burden of proving that this Court has jurisdiction, Wal-Mart asks for the opportunity to "undertake discovery to more fully explore the amount sought by" May. R. 6. In other words, Wal-Mart asks the Court to continue to exercise jurisdiction over this case and supervise discovery, even though Wal-Mart has not established that the Court has jurisdiction in the first place. Although many federal courts have allowed jurisdictional discovery in cases such as this—permitting a removing defendant an opportunity to establish the amount in controversy, *see, e.g.*, *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 367 (7th Cir. 1993); *LaSusa v. Lake Mich. Trans-Lake Shortcut, Inc.*, 113 F. Supp. 2d 1306, 1310-11 (E.D. Wis. 2000)—this Court respectfully disagrees with these decisions. For the reasons explained below, jurisdictional discovery is anathema to the limited nature of federal jurisdiction and the need to respect the authority of state courts. Therefore, the Court will deny Wal-Mart's request for jurisdictional discovery in this case.

Let's return to first principles. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). That is not just a catchphrase or a pro forma declaration. It is a mantra that defines the federal judiciary's role in our constitutional government. As the Supreme Court emphasized more than 200 years ago, "the fair presumption is . . . that a cause is without [a federal court's] jurisdiction, until the contrary appears." *Turner v. Bank of North America*, 4 U.S. 8, 11 (1799). "This renders it necessary, inasmuch as the proceedings of no court can be deemed valid further than its jurisdiction appears . . . to set forth upon the record . . . the facts or circumstances, which give jurisdiction." *Id.* The

6

Court has reaffirmed these basic principles time and time again. *See, e.g.*, *Fink v. O'Neil*, 106 U.S. 272, 280 (1882); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940). And the modern Court has not slackened the rule. "It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citing *Turner*, 4 U.S. at 11; *McNutt*, 298 U.S. at 182-83). Just as a criminal defendant is presumed innocent until the government proves him guilty, a case is presumed to fall outside a federal court's jurisdiction until a litigant proves otherwise.

Scrupulously guarding the limited jurisdiction of federal courts is most important when defendants remove cases from state court. Exercising federal jurisdiction in removed cases not only disrupts the plaintiff's choice of forum, it also implicates "state governments' rightful independence." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 454 (6th Cir. 1996). Article III courts were never intended to replace state courts as tribunals of general jurisdiction. Much to the contrary. As Alexander Hamilton wrote in Federalist No. 82, "[T]he State courts will *retain* the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes." THE FEDERALIST NO. 82 (Alexander Hamilton). This basic principle—that "State courts will be divested of no part of their primitive jurisdiction" absent an explicit congressional command in conformity with the Constitution—was, according to Hamilton, "the general genius of the system." *Id.*

As Hamilton recognized, state courts have the general authority to resolve disputes involving their citizens. Removal interferes with this sovereign prerogative. When a case is

removed, the long arm of federal jurisdiction reaches into the state court and halts the litigation in its tracks. As long as a removed case is before a federal court, the "state court [is] bound to refrain from further proceedings." *United States v. Shipp*, 203 U.S. 563, 573 (1906). Therefore, although the Constitution "secures to citizens of another state, when sued by a citizen of a state in which the suit is brought, the absolute right to remove their cases into the Federal court," defendants may only remove cases "upon compliance with the terms of the act of Congress enacted to effect that purpose." *Sec. Mut. Life Ins. Co. v. Prewitt*, 202 U.S. 246, 258 (1906). In other words, a state's sovereign power "to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). This is why removal statutes, including 28 U.S.C. § 1441, are strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

What does this mean, exactly? What does it mean to scrupulously guard the line between federal and state jurisdiction and strictly construe removal statutes? The Supreme Court gave the answer more than a century ago. "It is well settled that in the courts of the United States the special facts necessary for jurisdiction must in some form appear in the record of every suit." *Gold-Washing & Water Co. v. Keyes*, 96 U.S. 199, 201 (1877). "A suit commenced in a State court must remain there until cause is shown under some act of Congress for its transfer." *Id.* If the defendant wishes to remove the case from state to federal court, "[t]he record in the State court, which includes the petition for removal, should be in such a condition when the removal takes place as to show jurisdiction in the court to which it goes. If it is not, and the omission is

not afterwards supplied, the suit must be remanded." *Id*. The import of *Keyes* is plain. To remove a case from state court to federal court, the facts that establish federal jurisdiction must be evident on the face of the state court record. If they are not, and if the removing party cannot readily supply them, due regard for the authority of state courts requires the federal court to remand the case post haste.

Although the Court in *Keyes* tempered its dictate that a federal court must remand a case where the facts establishing federal jurisdiction do not appear in the state court record with the proviso that "the omission [may be] afterwards supplied," this is in no way a license for jurisdictional discovery. Rather, it simply allows a removing party the opportunity to supplement the record with evidence establishing federal jurisdiction that is already in his possession but that does not happen to appear in the state court record. Both the notice of removal and the Court's show cause order gave Wal-mart this opportunity. R. 5. But allowing a removing party this opportunity to supplement the record is a far cry from allowing that party to remove the case and then use the federal court's discovery powers to go on a fishing expedition in search of evidence justifying federal jurisdiction.

Wal-Mart's request for jurisdictional discovery runs headlong into these well-established principles. In conformity with Article III of the Constitution, Congress has authorized defendants to remove cases to federal court where the plaintiff and the defendant are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a), 1441(a). The Court must strictly construe these jurisdictional requirements, *Alexander*, 13 F.3d at 949, and must presume that it lacks subject matter jurisdiction "until the contrary appears," *Turner*,

9

4 U.S. at 11 . Indeed, *Keyes* directs the Court to remand the case if "the record in the State court [is not] in such a condition when the removal takes place as to show jurisdiction in the court to which it goes." 96 U.S. at 201.

Wal-Mart effectively asks the Court to do the exact opposite of what these principles demand. Wal-Mart requests that the Court retain jurisdiction over the case and oversee discovery until the evidence shows that the amount in controversy is less than $75,000. R. 6. In other words, Wal-Mart suggests that the Court should presume that it has jurisdiction until the contrary appears. That is exactly backwards. For this case to be in federal court, Wal-Mart must demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000. Until Wal-Mart has done so, the Court must presume that it lacks jurisdiction. *Turner*, 4 U.S. at 11. Federal jurisdiction is a binary choice. The switch is either on or off. Either Wal-Mart has established that federal jurisdiction exists by a preponderance of the evidence or it has not. The jurisdictional switch in this case is still clearly in the "off" mode. Therefore, the proper course is to remand this case to state court.

Other courts have also concluded that jurisdictional discovery does not square with the limited nature of federal jurisdiction. The Eleventh Circuit, for example, recently refused to permit jurisdictional discovery in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). In *Lowery*, a defendant removed a class action from state court to federal court but could not immediately establish that the amount in controversy exceeded the jurisdictional minimum. The defendant asked for an opportunity to conduct discovery into the amount in controversy, and the Eleventh Circuit said no. By removing the case, the defendant "represented to the court that

the case belongs before it." *Id.* at 1217. Having made such a representation, the court refused to allow the defendant to conduct a "fishing expedition[] [that] would clog the federal judicial machinery." *Id.* The court noted that allowing jurisdictional discovery would "impermissibly lighten[] the defendant's burden of establishing jurisdiction" and would frustrate the "limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction." *Id.* at 1217-18. Indeed, the court viewed the request for jurisdictional discovery as "tantamount to an admission that the defendants do not have a factual basis for believing that jurisdiction exists," requiring a remand to state court. *Id. Lowery*'s reasoning is very persuasive. It accords with the limited nature of federal jurisdiction and the need to avoid interfering with state court litigation absent concrete evidence that the case belongs in federal court.

The Court recognizes that, in some ways, its decision to deny Wal-Mart's request for jurisdictional discovery in this case bucks a trend. Jurisdictional discovery is quite common, after all. But the Court's decision in this case is limited to a very particular kind of jurisdictional discovery—that requested by defendants who remove a case from state court to federal court. The Court's analysis should not call into question other kinds of jurisdictional discovery that federal courts have long recognized and permitted. It is common, for example, for federal courts to permit discovery into whether the court has personal jurisdiction over a defendant. *See, e.g.*, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000). But personal jurisdiction over an individual defendant is very different from subject matter jurisdiction over the case. Personal

11

jurisdiction involves individual due process rights, whereas subject matter jurisdiction involves the court's power to hear the case in the first place. That is why personal jurisdiction defects are waivable and subject matter jurisdiction defects are not. *See Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006).

Federal courts also often allow plaintiffs who originally bring a case in federal court a limited amount of discovery to establish that the court has subject matter jurisdiction. *See, e.g.*, *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir. 2005) ("When a defendant challenges a court's actual subject matter jurisdiction . . . the parties must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction."); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). But this kind of jurisdictional discovery is also very different from the jurisdictional discovery that Wal-Mart requests in this case. When a plaintiff brings her case in federal court in the first place, the federal court does not exercise its jurisdiction to the exclusion of a state court. Therefore, allowing the parties a limited opportunity to gather evidence bearing on the court's jurisdiction does not halt state court litigation. But where a defendant asks for jurisdictional discovery after removing a case, it implicates the countervailing weight of state sovereignty. Also, when a plaintiff originally brings her case in federal court, that court is the only forum where the parties can uncover jurisdictional facts. There are no other options. But when a case has been removed there is another forum—the forum where the plaintiff originally brought the case—the state court. That is where the case belongs until the defendant can prove, by a preponderance of the evidence, that the case satisfies the requirements of federal jurisdiction.

So, what is Wal-Mart to do? The answer is simple. Wal-Mart should return to state court and litigate this case there. As discovery unfolds, it may become apparent that the amount in controversy more likely than not exceeds $75,000. Perhaps May will produce large medical bills. Perhaps an expert will opine that May's injuries are more extensive than originally thought. Although there is a 30-day time limit on removal, the clock does not start to run until the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). In other words, the 30-day clock stands still "until the defendant receives discovery responses showing that the amount in controversy exceeds the jurisdictional amount." *King*, 593 F. Supp. 2d at 960 n.2. The removal clock has not yet started to tick for Wal-Mart. Therefore, by remanding this case, the Court has not deprived Wal-Mart of its only opportunity to remove the case to federal Court. Wal-Mart will get another bite at the apple if and when the evidence it obtains during discovery in the state court reveals that the amount in controversy more likely than not exceeds $75,000.

This is the way that removal is supposed to work. The plaintiff brings her case in state court. The parties conduct discovery in state court. If the evidence produced during discovery reveals that the case satisfies the requirements for federal jurisdiction, the defendant may remove the case to federal court at that time. If the evidence produced during discovery does not reveal that the case satisfies the requirements for federal jurisdiction, the case remains in state court.

Compare this simple and elegant state of affairs with the procedure that Wal-Mart proposes. The plaintiff brings her case in state court. The defendant immediately removes the

13

case to federal court before it is clear that the case meets the requirements for federal jurisdiction. The federal court allows jurisdictional discovery. Months go by. The state court is frozen in its tracks, prohibited from doing anything with the case. If discovery produces evidence showing that the federal court has jurisdiction, the court will keep the case. If discovery does not produce such evidence, the federal court will remand the case to state court. In both scenarios, the case ultimately ends up in the proper court. But Wal-Mart's proposed scenario is much more problematic. It would allow any defendant to remove any case to federal court and then hunt for evidence establishing federal jurisdiction, all while unnecessarily halting the state court litigation for months (or longer). This is not the relationship between federal and state courts that the framers envisioned or that the Constitution allows.

And there is another problem with allowing parties to conduct "jurisdictional discovery" before the Court is even sure that it has jurisdiction. How is the Court supposed to supervise the parties' discovery without jurisdiction over the case? The discovery rules in the Federal Rules of Civil Procedure are not self-enforcing. Indeed, Rule 82 specifically provides that the "rules do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. For this reason, "the district court must have jurisdiction . . . before the discovery rules become operative." *Al Fayed v. CIA*, 229 F.3d 272, 276 (D.C. Cir. 2000). This makes perfect sense. Jurisdiction is power. Without jurisdiction, the Court lacks the power to order parties (either parties to the case or third parties) to comply with discovery requests or subpoenas.

As the Supreme Court held in *United States Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988), "[T]he subpoena power of a court cannot be more

extensive than its jurisdiction." Therefore, the Court held that a nonparty witness who refused to comply with a subpoena could challenge the district court's lack of subject matter jurisdiction as a defense to a contempt citation. *Id.* It is true that the Court in *Abortion Rights Mobilization* included the caveat that "nothing [in its decision] puts in question the inherent and legitimate authority of the court to issue process and other binding orders, including orders of discovery directed to nonparty witnesses, as necessary for the court to determine and rule upon its own jurisdiction, including jurisdiction over the subject matter." *Id.* at 79. But that case involved a suit that the plaintiffs had originally brought in federal court. As previously explained, jurisdictional discovery in removal cases is significantly more problematic because of the countervailing weight of state sovereignty. Therefore, the Supreme Court's proviso in *Abortion Rights Mobilization* does not undermine this Court's conclusion that jurisdictional discovery is inappropriate in this case.

And, finally, a host of practical problems confirm the Court's conclusion that it should not allow Wal-Mart to conduct jurisdictional discovery. Suppose the Court were to allow jurisdictional discovery. Wal-Mart might issue a subpoena to one of May's doctors. Suppose the doctor refuses to produce May's medical records, claiming that the information is privileged. Wal-Mart files a motion to compel, and the doctor resists. After protracted litigation, the Court determines that the information is not privileged and orders the doctor to produce May's records. The doctor still refuses. Does the Court have the power to hold him in contempt? Will the doctor defend against the contempt citation on the ground that the Court lacks subject matter jurisdiction over the case? Will the Court have to hold a mini-trial on the Court's own

15

jurisdiction in the underlying case before it can hold the doctor in contempt? What if other evidence has already determined that the amount in controversy is less than $75,000 and the Court has remanded the case back to state court? Would the Court have continuing jurisdiction over the contempt citation against the doctor? The Court might be left with the bizarre task of enforcing a contempt citation against a witness concerning a case that it remanded to state court and over which it never had jurisdiction.

This scenario is just a hypothetical, but it illustrates some of the practical and legal challenges that jurisdictional discovery could create. Therefore, even if the Court does retain some "inherent and legitimate authority" to oversee jurisdictional discovery, *Abortion Rights Movement*, 487 U.S. at 79, exercising that inherent authority in this case would be supremely unwise. All of these difficulties will be avoided by remanding the case to state court, allowing Wal-Mart to continue discovery there, and then entertaining a subsequent notice of removal if and when Wal-Mart gathers enough evidence to demonstrate that the amount in controversy more likely than not exceeds $75,000.

**CONCLUSION**

For all of these reasons, the Court will deny Wal-Mart's request for jurisdictional discovery and will remand the case to the Pike Circuit Court. Shooting first and asking questions later may have been acceptable at the O.K. Corral, but preserving the line between state and federal jurisdiction demands a good deal more. A federal court must presume that it lacks jurisdiction until the parties prove to the contrary. *Turner*, 4 U.S. at 11. Therefore, to remove a case from state court to federal court, a defendant must be able to demonstrate, *at the moment*

*of removal*, that the case meets the requirements for federal jurisdiction. A defendant that cannot do so will not find refuge in jurisdictional discovery.

Accordingly, because Wal-Mart has not established by a preponderance of the evidence that the amount in controversy in this case exceeds the jurisdictional minimum of $75,000, it is **ORDERED** that this case is **REMANDED** to the Pike Circuit Court. It is further **ORDERED** that this case is **STRICKEN** from the Court's active docket.

This the 17th day of November, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge